**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LOCAL 591, TRANSPORT WORKERS UNION OF AMERICA, and individuals GARY PETERSON, BRIAN FRIEDMAN, WILLIAM CARPENTER, AND STEVEN LOSOS, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES INC., <br><br> Defendant. | Case No. 15 C 652 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

On January 22, 2015, plaintiffs filed suit alleging violations of the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* ("RLA"). (Dkt. 1.) After amending their complaint, plaintiffs asked the court to enter a preliminary injunction. (Dkts. 17, 19.) In response, defendant moved to dismiss, arguing that the court lacked subject-matter jurisdiction or, in the alternative, that plaintiffs had failed to state a claim. (Dkt. 27.) For the reasons stated below, defendant's motion to dismiss is granted.

## BACKGROUND[1]

### I. The Parties

Local 591, Transport Workers Union of America ("Local 591") is one of three local unions established by the Transport Workers Union of America ("TWU"), which has been certified by the National Mediation Board as the collective bargaining agent for mechanics at

---

[1] The facts are drawn from plaintiffs' first amended complaint unless otherwise stated. Because defendant raises a factual challenge to the court's subject-matter jurisdiction, however, the court is not constrained by plaintiffs' complaint and can consider evidence proffered by defendant. *Apex Digital Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

1

American Airlines. (Dkt. 17 ("Am. Compl.") ¶ 6.) Local 591 represents mechanics at all but one of American Airlines' maintenance stations, including the Chicago and Dallas stations. (*Id.*) Gary Peterson is the president of Local 591 and Brian Friedman is the central region vice president. (*Id.* ¶¶ 7–8.) Steven Losos and William Carpenter are chairpersons at the Chicago station. (*Id.* ¶¶ 9–10.) American Airlines, Inc. is a commercial airliner based in the United States. (*See id.* ¶ 11.)

## II. The Facts

In 2008, the Federal Aviation Administration ("FAA") determined that American Airlines had violated certain federal regulations. (*Id.* ¶ 12.) Four years later, the FAA filed suit against American Airlines in bankruptcy court. (*Id.*) In 2013, the bankruptcy court approved a settlement between the FAA and American Airlines that reduced proposed fines against American Airlines on the condition that it comply with industry standards. (*Id.* ¶ 13.)

Plaintiffs allege that, despite its promise to comply with the standards, American Airlines has been pressuring employees—specifically its aircraft maintenance technicians ("AMTs")—to ignore the standards in order to keep planes operating and, in plaintiffs words, "in revenue service." (*Id.* ¶ 15.) According to plaintiffs, American Airlines has even threatened and retaliated against AMTs who insist on compliance with the standards. (*Id.* ¶ 16.)

After learning of this intimidation, Local 591 advised AMTs to file complaints with American Airlines' human resources department. (*Id.* ¶¶ 16, 20.) But American Airlines' human resources representatives either failed to respond to the complaints or steered the AMTs back to the managers who were harassing them. (*Id.* ¶ 20.) After some discussion with Local 591, the Chicago-based AMTs decided to file a whistleblower complaint with the United States

2

Department of Labor under 49 U.S.C. § 42121, a statute that protects employees from employer retaliation for reporting air carrier safety violations. (*Id.* ¶ 22.)

The Department of Labor forwarded a copy of the complaint to the FAA, which initiated its own investigation. (*Id.* ¶ 26.) In the process, the FAA visited American Airlines' Chicago station to interview the AMTs. (*Id.* ¶¶ 26–27.) According to plaintiffs, American Airlines managers told plaintiffs that they, and not the managers, would be subject to an FAA enforcement action. (*Id.* ¶ 27.) Fearful of the FAA, and of retaliation by defendant, the AMTs requested their union representatives be present for the interviews. (*Id.* ¶ 29.) American Airlines refused, and a manager warned the union representatives that if they tried to sit in on the interviews they would be subject to discipline—including termination. (*Id.*) The next day, however, American Airlines changed its position and allowed Local 591 to provide representation for the AMTs during the interviews. (Dkt. 28-5 ¶ 4.)

Still concerned with the alleged intimidation of AMTs, Local 591 decided to investigate further. (Am. Compl. ¶ 32.) On December 4, 2014, Peterson, the president of 591, and Friedman, the vice president, visited American Airlines' Dallas station in order to observe maintenance practices. (*Id.* ¶ 33.) According to plaintiffs, Peterson and Friedman were immediately followed by an American Airlines supervisor. (*Id.*) Plaintiffs allege that when Peterson complained to Station Manager William Roper that the monitoring "prevented him from communicating with his members," Roper threatened to have the union representatives arrested.[2] (*Id.*)

Defendant offers a different version of Peterson and Friedman's visit. According to defendant, Peterson and Friedman called a meeting of AMTs during work hours. (*See* dkt. 28-6

---

[2] The first amended complaint says that Roper threatened to have "the union representatives" fired; it is unclear whether this refers to Peterson and Friedman only or other representatives as well.

3

¶¶ 2–3.) American Airlines' management learned of the meeting when airport control tower employees informed them that a large crowd of AMTs was gathered on an outdoor maintenance pad. (*Id.* ¶ 2.) After the meeting, Roper asked a shift supervisor to monitor Peterson and Friedman to prevent any further disruptions. (*Id.* ¶¶ 4–6.) Defendant maintains that Roper did not threaten to have Peterson arrested; he simply warned Peterson that he would call airport security if necessary. (*Id.* ¶ 7.)

A little more than a month later, plaintiffs filed the instant complaint, alleging four violations of the RLA: (1) that defendant has not made "every reasonable effort" to make and maintain labor agreements and settle disputes under Section 2, First; (2) that defendant has interfered with plaintiffs' choice of representatives under Section 2, Third; (3) that defendant has interfered with plaintiffs' right to organize Section 2, Fourth; and (4) that defendant failed to "treat," or negotiate, terms and conditions of employment with plaintiffs' certified bargaining representative. (*See* dkt. 1; Am. Compl. ¶¶ 61–68.)

Plaintiffs allege that since filing the complaint, they have been subject to increased intimidation. (Am. Compl. ¶¶ 38–39.) According to plaintiffs, Regional Maintenance Director Evita Rodriguez ordered American Airlines managers to keep track of what Friedman and Thomas Ceplecha, a regional chairperson, do each day. (*Id.* ¶ 40.) Plaintiffs also claim that Rodriguez issued a directive that all union representatives be subject to disciplinary investigation if they are involved in any delays. (*Id.* ¶ 46.) Plaintiffs claim that one representative has been subject to such an investigation. (*Id.*) Defendant disputes these claims. According to defendant, Friedman and Ceplecha are not monitored; American Airlines managers simply keep track of their work assignments to ensure productivity. (Dkt. 28-5 ¶¶ 7–8.) Defendant also states that there is no policy of investigating union representatives specifically, and that the representative

4

at issue was investigated because he caused a delay, not because he is affiliated with the union. (*Id.* ¶¶ 11–12.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a defendant can assert a "lack of subject-matter jurisdiction" defense to a plaintiff's claims. Fed. R. Civ. P. 12(b)(1). These defenses can be facial (that the plaintiff's allegations, even if true, fail to support jurisdiction) or factual (conceding that the allegations are sufficient but offering contrary evidence). *Apex Digital Inc.* v. *Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

Defendant does not say whether its challenge is facial or factual. Although its briefs appear to accept plaintiffs' allegations as true (suggesting a facial challenge), these briefs were submitted with four declarations and eight exhibits (suggesting a factual challenge). (Dkts. 28, 33.) Plaintiffs argue that defendant's challenge is factual in their response (*see* dkt. 32 at 2), and defendant does not dispute this in its reply, (*see* dkt. 33). Thus, the court will treat defendant's challenge as factual.

In a factual challenge to subject-matter jurisdiction, once a defendant produces evidence calling the court's subject-matter jurisdiction into question, "[t]he presumption of correctness that we accord to a complaint's allegations falls away." *Apex Digital, Inc.*, 572 F.3d at 444–45 (alternation in original) (citation omitted) (internal quotation marks omitted). The burden then shifts to the plaintiff to provide "competent proof" that subject-matter jurisdiction exists. *Id.* When considering a motion that launches a factual attack, "'[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Evers* v.

*Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (alternation in original) (quoting *St. John's United Church of Christ* v. *City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007)).

## ANALYSIS

I. **Whether Plaintiffs' Allegations Raise Major or Minor Disputes**

As stated above, plaintiffs allege four claims: a claim under Section 2, First for failure to resolve disputes arising from a collective bargaining agreement; claims under Section 2, Third and Fourth for interference with representation rights; and a claim under Section Two, Ninth for failure to negotiate with the certified bargaining representative. (Am. Compl. ¶¶ 61–68.) Defendant argues that these claims arise from minor disputes and thus are subject to mandatory arbitration—depriving the court of subject-matter jurisdiction.[3]

A. **Legal Standard**

The RLA, which applies to railroads and airlines, promotes stability in labor-management relations by providing a comprehensive framework for resolving labor disputes. 45 U.S.C. § 151a; *see also Hawaiian Airlines, Inc.* v. *Norris*, 512 U.S. 246, 252, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994); *Carlson* v. *CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014). The statute channels disputes into two categories—major and minor—and prescribes different resolution procedures for each. *Carlson*, 758 F.3d at 831. Although major disputes can be heard in court,

---

[3] It is possible that a failure to comply with the RLA's arbitration provision does not have jurisdictional implications, and that instead of depriving the court of subject-matter jurisdiction it simply defeats the claim. "Jurisdiction," as the Supreme Court has observed, "is a word with many, too many, meanings"; the Court has recognized that multiple statutory requirements that have been deemed jurisdictional are actually just elements that must be satisfied for a plaintiff to state a claim. *Arbaugh* v. *Y&H Corp.*, 546 U.S. 500, 510, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) (quoting *Steel Co.* v. *Citizens for Better Environment*, 523 U.S. 83, 90, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)) (internal quotation marks omitted). Although the Seventh Circuit has acknowledged that there is a question as to whether the RLA's arbitration requirement is jurisdictional, it has not yet answered it, *see Carlson* v. *CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014), and thus the court treats the issue as one of subject-matter jurisdiction.

6

the RLA requires minor disputes "be resolved in arbitration before an adjustment board established by the employer and union." *Id.* (citing *Hawaiian Airlines, Inc.*, 512 U.S. at 252).

A major dispute involves the "formation or modification of a collective bargaining agreement." *Id.* at 832 (citing *Hawaiian Airlines, Inc.*, 512 U.S. at 252; *Chicago & N.W. Transp. Co.* v. *Ry. Labor Execs. Ass'n*, 908 F.2d 144, 148 (7th Cir. 1990)). A minor dispute arises "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i). Thus, "major disputes seek to create contractual rights, minor disputes seek to enforce them." *Hawaiian Airlines, Inc.*, 512 U.S. at 253 (citing *Consol. Rail Corp.* v. *Ry. Labor Execs. Ass'n*, 491 U.S. 299, 302, 109 S. Ct. 2477, 105 L. Ed. 2d 250 (1989)).

When parties disagree about whether a dispute is major or minor, it is left to the courts to decide, but "the party seeking to establish that a dispute is minor and under the exclusive arbitral jurisdiction of a RLA Adjustment Board faces a 'relatively light burden.'" *Bhd. of Maint. of Way Employees Div./IBT* v. *Norfolk S. Ry. Co.*, 745 F.3d 808, 813 (7th Cir. 2014) (quoting *Consol. Rail Corp.*, 491 U.S. at 307). Indeed, an employer's reliance on a contractual right ordinarily is enough to confirm the existence of a minor dispute unless it is clear that the employer's claim is "insincere" or founded on "insubstantial grounds." *Consol. Rail Corp.*, 491 U.S. at 306 (citations omitted). A carrier's claim is founded on "insubstantial grounds" only if it would undermine the RLA's prohibitions against unilateral imposition of new contractual terms. *Id.* (citations omitted). In making its determination, the court must be careful not to consider the merits of the underlying dispute: "its role is limited to determining whether the dispute can be characterized as involving the proper application or meaning of a contract provision." *Ry. Labor Execs. Ass'n* v. *Norfolk & W. Ry. Co.*, 833 F.2d 700, 704 (7th Cir. 1987).

B.     **Count I**

Defendant argues that plaintiffs' first claim—that American Airlines failed to resolve disagreements arising from the parties' collective bargaining agreement—is nothing more than a dispute over the processing and scheduling of grievances, and, because this dispute implicates a contractual right, can properly be classified as minor under the RLA. The court agrees.

Defendant contends that plaintiffs' first claim triggers the grievance provisions of the parties' collective bargaining agreement, outlined in Articles 29–32. (Dkt. 28 at 9.) Article 29 covers union representation, Article 30 discusses grievance procedures for corrective or disciplinary action (including dismissal), and Article 31 covers grievance procedures for contractual disputes. (Dkt. 28-2 at 164–80.) Defendant argues that plaintiffs' dispute can be resolved by an interpretation and application of these articles. This argument is not "insincere" or founded on "insubstantial grounds." *See Consol. Rail Corp.*, 491 U.S. at 306. Nor does it "compel[] the inference that defendant is trying to circumvent the major dispute procedures of the RLA." *See Bhd. of Maint. of Way Employees* v. *Union Pac. R. Co.*, 358 F.3d 453, 457 (7th Cir. 2004).

Plaintiffs' supporting facts—including the allegation that defendant's human resources department either failed to respond to complaints of harassment or "steered the complainants back to the management representatives who were harassing them"—support this conclusion. (*See* Am. Compl. ¶ 20.) Even if the court takes these allegations as true, they do not establish a dispute that involves the "formation or modification of a collective bargaining agreement." *See Carlson*, 758 F.3d at 832 (citation omitted). Rather, they suggest a dispute arising "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *See* 45 U.S.C. § 153 First (i).

Plaintiffs try to convert their claim into a major dispute by arguing that any attempt to resolve the claim through the parties' collective bargaining agreement would be futile due to the "enormous backlog of grievances," "the insufficiency of arbitration hearing dates available to Local 591," and "the limitations on arbitral remedial authority." (Am Compl. ¶ 21.) It is unclear, however, how inconvenience involves the "formation or modification of a collective bargaining agreement." *Carlson*, 758 F.3d at 832 (citation omitted). The court need not answer this question, however, as defendant has submitted evidence that American Airlines' management continues to meet regularly with Local 591 representatives to attempt to resolve disputes before arbitration. (Dkt. 28-5 ¶¶ 15–18.) Defendant also notes that the hearing dates available to Local 591 are determined by an agreement between defendant and TWU (Local 591's parent organization), which further supports the conclusion that the dispute is one that can be resolved by the interpretation and application of existing agreements. (Dkt. 28 at 9–10.) Plaintiffs do not offer any evidence to the contrary.

### C. Counts II and III

In Counts II and III, plaintiffs allege that defendant has interfered with their representation rights under Section 2, Third and Fourth of the RLA. (Am. Compl. ¶¶ 63–66.) Section 2, Third provides that "neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives" and Section 2, Fourth makes it unlawful "for any carrier to interfere in any way with the organization of its employees." 45 U.S.C. § 152 Third, Fourth.

Plaintiffs allege that defendant interfered with their representation rights in a number of ways. First, plaintiffs claim that American Airlines prevented union representatives from attending FAA-conducted interviews. (Am. Compl. ¶ 29.) According to plaintiffs, even though

9

they specifically requested union presence, an American Airlines manager told Local 591 representatives that if they attempted to provide representation they would be subject to discipline, including termination. (*Id.*) Plaintiffs also allege that American Airlines monitored its president and vice president, Peterson and Friedman. (*Id.* ¶ 33.) According to plaintiffs, when Peterson contacted Roper, the station manager, to complain that the monitoring kept him from communicating with Local 591 members, Roper threatened to have the union representatives arrested. (*Id.*)

Plaintiffs further allege that the monitoring has intensified since they filed the suit. (*Id.* ¶¶ 38–39.) Specifically, plaintiffs claim that Regional Maintenance Director Rodriguez ordered the American Airlines manager on duty to account for what Friedman and Ceplecha (the region chairperson) do each day and that she issued a directive requiring American Airlines supervisors to conduct disciplinary investigations into union representatives any time they are involved in a delay. (*Id.* ¶¶ 40–41, 46.)

Defendant argues that these claims raise minor disputes because they implicate express provisions of the parties' collective bargaining agreement—specifically Articles 28 and 29. (Dkt. 28 at 10.) For example, defendant contends that Article 29(f), which outlines the circumstances in which employees are entitled to have a union representative present, governs plaintiffs' claim that an American Airlines manager refused to let union representatives attend the FAA interviews:

> In meetings for the purpose of investigation of any matter which may eventuate in the application of discipline or dismissal or when written statements may be required, or of sufficient importance for the Company to have witnesses present, or to necessitate the presence of more than one Company supervisor, or during reasonable cause or post accident drug/alcohol testing as provided in Article 29(h), the Company will inform the employee of his right to have Union representation present.

(Dkt. 28-2 at 165.) Defendant argues that the FAA interviews did not involve any of the circumstances outlined above, and that therefore it thought it was not obligated to allow representatives to take time off work to attend. (Dkt. 28 at 13.) This interpretation of the collective bargaining agreement is neither "insincere" nor founded on "insubstantial grounds." *See Consol. Rail Corp.*, 491 U.S. at 306. Thus, defendant has met its "'relatively light burden.'" *See Norfolk S. Ry. Co.*, 745 F.3d at 813 (quoting *Consol. Rail Corp.*, 491 U.S. at 307). It is also worth noting that the parties resolved the dispute the next day, when defendant allowed representatives to attend the meetings. (*See* dkt. 28 at 13.) Plaintiffs do not dispute this.

Defendant further argues that plaintiffs' allegations that defendant monitored union representatives trigger Article 28(b) of the parties' agreement, which provides, in part, that "the Union recognizes that the Company will have sole jurisdiction of the management and operation of its business, the direction of its working force," and "the right to maintain discipline and efficiency in its handers, stations, shops, or other places of employment." (Dkt. 28-2 at 161.) Defendant argues that Peterson and Friedman had already caused a significant disruption, and that it had the right, under the parties' agreement, to take actions to prevent additional disruptions of maintenance operations. (Dkt. 28 at 11.) Defendant also submits a declaration from Roper stating that, while he told Peterson he would call security if Peterson caused any further disruptions, he did not threaten to have Peterson arrested. (Dkt. 28-6 ¶ 7.) Defendant further argues that any additional monitoring of Friedman and Ceplecha is not really monitoring at all—defendant simply keeps track of their work assignments (as it does with other AMTs) to ensure productivity. (Dkt. 28 at 11–12.) As noted above, an employer's reliance on a right set forth in the parties' collective bargaining agreement ordinarily is enough to confirm the existence of a minor dispute unless it is clear that the employer's claim is "insincere" or founded on

11

"insubstantial grounds." *Consol. Rail Corp.*, 491 U.S. at 306. Neither exception applies. Thus the court agrees that these allegations raise only minor disputes.

Finally, defendant argues that plaintiffs' allegation that a union representative was subject to a disciplinary investigation also implicates Article 28(b), which states that American Airlines has a right to discipline employees, as well as Article 29(f), which states that American Airlines has a right to manage, supervise, and make inquiries of employees. (Dkt. 28 at 12–13.) The court agrees.

### D. Count IV

Plaintiffs' final claim is that defendant failed to negotiate with the certified representative in violation of Section 2, Ninth of the RLA. (Am. Compl. ¶¶ 67–68.) This claim appears to be based on the same allegations as the violations of Section 2, Third and Fourth. Thus, for the reasons stated above the court finds that this claim raises a minor dispute subject to mandatory arbitration under the RLA.

## II. Whether There is an Alternative Basis for Jurisdiction

Although plaintiffs do not clearly articulate it in their response to defendant's motion to dismiss, there may be an alternate basis for jurisdiction: a federal court may exercise jurisdiction over violations of the RLA without regard to the court's characterization of the dispute as major or minor where judicial intervention is required to give effect to statutory rights. *See Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Employees* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d 403, 408 (7th Cir. 1988) (citations omitted); *see also Switchmen's Union of N. Am.* v. *Nat'l Mediation Bd.*, 320 U.S. 297, 300, 64 S. Ct. 95, 88 L. Ed. 61 (1943). This jurisdiction is limited to exceptional circumstances: "In those disputes in which the RLA's extrajudicial dispute-resolution mechanisms are capable of adequately protecting the rights of the

parties, federal courts may not interfere with the statutory process." *Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d at 409 (citations omitted)

Plaintiffs argue that defendant has engaged in "intimidation tactics" such as "threatening and spying on union leaders," and that these tactics evince an anti-union animus. (Dkt. 32 at 8.) Plaintiffs further argue that defendant's actions have undermined the union's ability to function as intended under the RLA. (*Id.* at 9.) This is an overstatement. Even giving them the benefit of the doubt, plaintiffs allege only one true threat: Roper's threat to have Peterson arrested. And defendant's monitoring of union representatives, whatever the motivation, cannot fairly be called "spying." Thus, taking plaintiffs allegations as true, they have alleged one threat, the monitoring of union representatives, and what could fairly be characterized as anti-union policies (for example, Rodriguez's order that managers monitor Friedman and Ceplecha, or her directive that union representatives be subject to a disciplinary investigations whenever they are involved in a delay). But as noted above, the court does not have to take plaintiffs' allegations as true. This is a factual challenge to jurisdiction, and the court may "'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *See Evers*, 536 F.3d at 656–57 (quoting *St. John's United Church of Christ*, 502 F.3d at 625). Thus, the court may consider Roper's assertion that he did not threaten to have Peterson arrested (but merely warned Peterson he would call security) and Rodriguez's statement that Friedman and Ceplecha were monitored out of concerns over their productivity. (Dkts. 28-5 ¶¶ 7–8, 28-6 ¶ 7.) Without making any factual findings, the court is left with either a threat to call the police or a warning to call security, the monitoring of union representatives to interfere with their responsibilities or to avoid disruption and ensure their productivity, the disciplinary investigation of one employee out of anti-union

animus or concern over delay, and a single day where union representatives were not allowed to accompany members to FAA-conducted interviews. These are not the "exceptional circumstances" courts have found are necessary to support subject-matter jurisdiction. Indeed, plaintiffs have not shown that judicial intervention is required to give force to their statutory rights. *See Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d at 409. Because the limits to the court's jurisdiction have been drawn out of respect for the remedial scheme created by the RLA, reluctance to expand this narrow jurisdiction is particularly justified where, as here, the employer argues that its actions were allowed under the collective bargaining agreement. *See id.*; *see also Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO* v. *Alaska Airlines, Inc.*, 813 F.2d 1038, 1040 (9th Cir. 1987) (declining to exercise jurisdiction over allegation of statutory violation that could be resolved by interpretation of parties' collective bargaining agreement); *Air Line Pilots Ass'n, Int'l* v. *Texas Int'l Airlines, Inc.*, 656 F.2d 16, 19–24 (2d Cir. 1981) (discussing limited role of federal courts in enforcing the RLA). Thus, the court declines to exercise jurisdiction over the case. Because the court has concluded it has no jurisdiction, it does not reach defendant's arguments under Rule 12(b)(6).

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss (dkt. 27) is granted. Plaintiffs' motion for preliminary injunction (dkt. 19) is denied as moot. The case is terminated.

Date: June 19, 2015 _____
U.S. District Judge